**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| **TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO** | ) | |
| Plaintiff, | ) | Case No. |
| **v.** | ) | |
| **BRIGHTLINE TRAINS FLORIDA, LLC** | ) | |
| Defendant**.** | ) | |

**COMPLAINT**

The Transport Workers Union of America, AFL-CIO ("TWU" or "Union"), brings this action against Brightline Trains Florida, LLC ("Brightline FL" or "Company"), for declaratory and injunctive relief under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. TWU has been certified by the National Mediation Board ("NMB") as the representative for collective bargaining of Brightline FL's On-Board Service Employees, but the Company has disputed and challenged the NMB's decision and denied that Brightline FL is subject to the RLA, so it has therefore violated RLA Section 2 First (45 U.S.C. § 152 First) which requires carriers and their employees to exert every reasonable effort to make and maintain agreements and bargain in good faith.

**PARTIES**

1. TWU is an unincorporated labor association that maintains its headquarters in the District of Columbia. TWU represents over 155,000 workers in the railroad, airline, and transit industries.

2. Brightline FL is a Delaware limited liability company headquartered in Miami, FL. It is a railroad that provides intercity passenger rail service between Miami, FL and Orlando, FL, running partially on tracks owned and shared by the Florida East Coast Railroad ("FECR"). Brightline FL was previously known as All Aboard Florida before taking its current name.

3. The NMB has determined that Brightline FL is a "carrier" under the RLA and subject to the RLA; and the NMB has certified TWU as the representative under Section 1 Sixth of the RLA (45 U.S.C. § 151 Sixth) for collective bargaining of On-Board Service Employees of Brightline FL.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction to hear TWU's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because TWU seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c) because Brightline FL is headquartered and operates in this District, and actions that are at issue in this complaint arose in this District.

**STATEMENT OF THE CLAIM**

6. In providing intercity passenger rail service between Miami and Orlando Florida, Brightline FL employs workers as On-Board Service Employees. The duties of Brightline FL's On-Board Service Employee include providing food and beverage service to passengers on Brightline FL trains, as well as responding to passenger concerns and requests.

7. Brightline has accepted funds from the U.S. Department of Transportation ("DOT") under the Consolidated Rail Infrastructure and Safety Improvements ("CRISI") Grant Program,

and has operated on and used rail infrastructure that has been constructed or improved with CRISI grant funds.

8. DOT CRISI grants are subject to a number of conditions, including those at 49 U.S.C. § 22905(b), which provides:

> (b) Operators Deemed Rail Carriers and Employers for Certain Purposes.—A person that conducts rail operations over rail infrastructure constructed or improved with funding provided in whole or in part in a grant made under this chapter shall be considered a rail carrier as defined in section 10102(5) of this title for purposes of this title and any other statute that adopts that definition or in which that definition applies, including—
>
> (1) the Railroad Retirement Act of 1974 (45 U.S.C. 231 et seq.);
>
> (2) the Railway Labor Act (45 U.S.C. 151 et seq.); and
>
> (3) the Railroad Unemployment Insurance Act (45 U.S.C. 351 et seq.).

9. On August 8, 2024, TWU and On-Board Service Employees of Brightline FL filed an application with the NMB seeking a determination that the TWU is the collective bargaining representative of the Company's On-Board Service Employees. TWU's application was supported by authorization cards signed by a majority of Brightline FL's On-Board Service Employees.

10. Brightline FL objected to TWU's application by contesting the NMB's jurisdiction over the Company, and to the Company's status as a carrier under the RLA by citing a 2012 decision of the United States Surface Transportation Board ("STB"), holding that it did not have jurisdiction under 49 U.S.C. § 10101 et seq. over Brightline FL's predecessor, All Aboard Florida, *All Aboard Florida*, (S.T.B. Dec. 21, 2012) No. FD 35680. The Company contended that since the STB held that it lacked jurisdiction over All Aboard Florida, Brightline FL could not be a "carrier" under the RLA and subject to the NMB's jurisdiction.

11. TWU responded to Brightline FL's challenge to the NMB's jurisdiction, by, among other things, arguing that because Brightline has received millions of dollars of federal funding

through the DOT's CRISI grant program, and millions of dollars of CRISI grant funds were awarded to other entities in Florida to construct and improve the infrastructure over which Brightline FL operates, Brightline FL is a carrier subject to the NMB's jurisdiction by operation of law. TWU asserted that, by operating on infrastructure constructed or improved with CRISI grants, under 49 U.S.C. § 22905(b), Brightline FL is considered a carrier as defined in 49 U.S.C. § 10102(5), and under the RLA, because the RLA defines "carrier" as including any railroad subject to the jurisdiction of the STB, and because Section 22905(b) explicitly identifies the RLA as a statute under which an entity is deemed a rail carrier as a result of operating on infrastructure constructed or improved with CRISI grants.

12. On November 12, 2024, the NMB issued a decision determining that Brightline FL is covered by the RLA, that the Board had jurisdiction over Brightline FL and TWU's application, and authorizing an election among the Company's On-Board Service Employees concerning their representative for purposes of bargaining under the RLA. *Transport Workers Union of Am.*, 52 N.M.B. No. 9, 52 N.M.B. 44 (2024).

13. On December 4, 2024, Brightline FL initiated an action in this Court seeking judicial review of the NMB's decision, as well as declaratory judgment that the NMB's decision is void and unenforceable and that Brightline FL is not covered by the RLA.

14. On January 14, 2025, the NMB tallied the votes of Brightline FL's On-Board Service Employees and found that a majority of those voting had voted for representation by TWU.

15. On January 15, 2025, the NMB issued a certification that TWU is the collective bargaining representative under the RLA of Brightline FL's On-Board Service Employees. Despite this, Brightline FL continues to maintain that it is not covered by the RLA.

16. On January 29, 2025, TWU served a notice on Brightline FL under Section 6 of the RLA, 49 U.S.C. § 156, of TWU's intent to negotiate with Brightline FL over the rates of pay, rules and working conditions of Brightline FL's On-Board Service Employees.

17. Brightline FL responded to TWU's Section 6 Notice by inquiring about potential dates to meet, but Brightline FL continues to challenge the NMB's decision and the RLA's application to Brightline FL and its On-Board Service Employees.

**CAUSE OF ACTION**

18. TWU repeats and realleges herein the allegations contained in paragraphs 1-17 above which are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

19. Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth provides, in part:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter….

20. Section 2 First of the RLA, 45 U.S.C. § 152 First provides:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

21. The United States Supreme Court has held that:

> "[t]he heart of the Railway Labor Act is the duty, imposed by § 2 First upon management and labor, 'to exert every reasonable effort to make and

> maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes . . . in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.'"

and that:

> The strictest compliance with the formal procedures of the Act is meaningless if one party goes through the motions with "a desire not to reach an agreement." *NLRB v. Reed Prince Mfg. Co.,* 205 F.2d 131, 134 (CA1 1953). While cases in which the union is the party with this attitude are perhaps rare, they are not unknown. *See Chicago Typographical Union No. 16,* 86 N.L.R.B. 1041 (1949), *enforced sub nom. American Newspaper Publishers Assn. v. NLRB,* 193 F.2d 782 (CA7 1951), *aff'd as to another issue,* 345 U. S. 100. We think that, at least to this extent the duty to exert every reasonable effort is of the essence.

*Chicago & N.W. R. Co. v. Transportation Union*, 402 U.S. 570, 578-579 (1971).

22. There is a controversy between the parties over Brightline FL's failure to comply with Section 2 First of the RLA—which is "central to the effective working" of the law itself—that necessitates an immediate declaratory judgment from this Court. *Id.* at 578. While Brightline FL has agreed to meet with TWU and the bargaining committee of the Company's On-Board Service Employees, Brightline FL's simultaneous, ongoing effort to overturn the NMB's determination that Brightline FL and its employees are subject to the RLA, as well as the NMB's certification of TWU as collective bargaining representative, are fundamentally inconsistent with its duty under RLA Section 2 First to exert every reasonable effort to make and maintain agreements with TWU as the representative of its On-Board Service Employees and to bargain in good faith with TWU.

23. TWU has properly invoked negotiations under the RLA with the Section 6 Notice, and Brightline FL's insistence that the statute that forms the basis for collective bargaining does not apply to it is inherently at odds with good faith negotiations. While Brightline FL continues to reject the application of the RLA and claim that the Company is not subject to the statute, it

cannot complete negotiations with TWU for an RLA collective bargaining agreement. It is impossible for Brightline FL to exert every reasonable effort to make an agreement as required by Section 2 First of the RLA so long as the Company contends that it is not covered by the RLA, the very statute under which it is supposed to be bargaining in good faith. Unless and until Brightline FL accepts that it is subject to RLA jurisdiction, no RLA agreement can be reached with TWU, and the "negotiations" will be meaningless.

24. As the certified bargaining representative of Brightline FL's On-Board Service Employees under Section 1 Sixth of the RLA, TWU is being harmed by Brightline FL's refusal to follow the requirements of RLA, including the requirement to exert every reasonable effort to reach a collective bargaining agreement with TWU under the RLA. Negotiations for collective bargaining agreements require substantial time and expense, and a declaratory judgment is urgently needed to prevent Brightline FL from just "go[ing] through the motions with a desire not to reach an agreement" under the RLA. *See Chicago & N.W. R. Co.*, 402 U.S. at 578 (internal quotations and citations omitted).

**REQUEST FOR RELIEF**

WHEREFORE, TWU respectfully requests that the Court:

A. DECLARE that Brightline FL is in violation of RLA Section 2 First by refusing to exert every reasonable effort to make an agreement with TWU because Brightline FL has denied and continues to deny that it and its On-Board Service Employees are covered by the RLA;

B. ENJOIN Brightline FL from refusing to exert every reasonable effort to make an agreement with TWU;

C. GRANT TWU such other and further legal and equitable relief that the Court deems just and proper; and

   D. GRANT TWU its attorneys fees and costs of this action.

Dated: February 25, 2025

Respectfully submitted,

*/s/ Mark H. Richard*
Mark H. Richard
Florida Bar No. 305979
Christina S. Gornail
Florida Bar No. 085922
PHILLIPS, RICHARD & RIND, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, FL 33173
Telephone: (305) 412-8322
Facsimile: (305) 412-8299
Email: mrichard@phillipsrichard.com
Email: cgornail@phillipsrichard.com

Richard S. Edelman *
Aaron S. Edelman *
MOONEY, GREEN, SAINDON, MURPHY & WELCH
1620 Eye Street, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 783-0010
Facsimile: (202) 783-6088
Email: redelman@mooneygreen.com
Email: aedelman@mooneygreen.com

*Attorneys for TWU*

*Motions to Appear Pro Hac Vice forthcoming